UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | )<br>) |
| GERALD EILAND, | ) Case No: 1:04-cr-00379-RCL<br>) |
| Defendant. | )<br>)<br>) |

## MEMORANDUM OPINION

Before the Court is the Motion Pursuant to 18 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1159] by the defendant Gerald Eiland. Defendant claims ineffective assistance of trial counsel and requests that this Court vacate, set aside or correct the sentence imposed on him. Upon consideration of the Motion [ECF No. 1159], the government's Opposition [ECF No. 1169], the entire record herein, and applicable law, the Court **DENIES** the defendant's Motion.

I. BACKGROUND

Beginning in March of 2003, the Federal Bureau of Investigation ("FBI") and the D.C. Metropolitan Police Department investigated a suspected narcotics trafficking operation in the District of Columbia. *United States v. Eiland*, 738 F.3d 338, 345 (D.C. Cir. 2013). This investigation, which included the use of physical surveillance, informants, pen register and toll record analysis, and judicially authorized wiretaps, resulted in charges against twenty-one defendants for conspiring to distribute heroin, cocaine, cocaine base, and PCP between 1999 and 2004 in Virginia, Maryland, and the District of Columbia. *Id.* Gerald Eiland ("Eiland") and Frederick Miller ("Miller") were identified as the leaders of the operation. *Id.*

Prior to trial, many of the defendants moved to suppress evidence collected through the use of the wiretaps, which they argued were authorized in violation of 18 U.S.C. § 2510, *et seq*. *United States v. Eiland*, 398 F.Supp.2d 160, 162-63 (D.D.C. 2005). Of particular relevance to this motion is the February 13, 2004, affidavit supporting a wiretap of Miller's telephone submitted by Special Agent Sparks ("Sparks 2/13/2004 Affidavit"), which the defendants argued contained misleading information and omitted material facts. *Id*. at 163-65. This Court denied the motions to suppress. *Id*. at 176.

On October 3, 2006, Eiland proceeded to jury trial with codefendants Miller, Robert Bryant, and Alvin Gaskins. 738 F.3d at 345-46. Bryant was acquitted on all charges, and Gaskins was found guilty only of narcotics conspiracy. *Id*. Eiland and Miller were both found guilty of: (1) narcotics conspiracy with intent to distribute heroin, cocaine, and cocaine base; (2) RICO conspiracy; (3) continuing criminal enterprise; (4) attempt to possess with intent to distribute heroin; and (5) three counts of unlawful use of a communication facility. *United States v. Eiland*, 525 F. Supp. 2d 37, 39 (D.D.C. 2007). Eiland and Miller were sentenced to concurrent sentences of life imprisonment for RICO conspiracy and continuing criminal enterprise, with additional lesser sentences imposed for the other convictions. 738 F.3d at 346.

On appeal, Eiland and Miller raised several points of error, including, *inter alia*: (1) that the affidavits supporting the application for (and subsequent extensions of) a wiretap on Miller's phone failed to establish probable cause or necessity, and therefore the trial court erred in denying the defendants' motions to suppress; (2) that the trial court erred in allowing FBI Agent John Bevington's testimony, which the defendants argued provided a superfluous overview of conspiracy investigations and improperly vouched for cooperating informants; and (3) that the trial court erred in allowing FBI Agent Hall's lay opinion testimony interpreting the wiretap evidence.

*Eiland*, 738 F.3d at 347-54. The D.C. Circuit affirmed the convictions, holding in relevant part: (1) that both probable cause and necessity had been established for the wiretap applications and extensions thereof; (2) that while Agent Bevington's testimony was plain error pursuant to the recent holding in *United States v. Moore*, 651 F.3d 30, 59-61 (D.C. Cir. 2011), the error was harmless; and (3) that the defendants failed to demonstrate that any error in allowing Agent Hall's testimony, if existent, was prejudicial. *Id.* at 348-54.

Eiland timely filed the present Motion [ECF No. 1159] within one year of the Circuit's denial of his petition for rehearing. The Motion prays that this Court vacate, set aside, or correct Eiland's sentence pursuant to 18 U.S.C. § 2255 on the grounds that Eiland was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. ECF No. 1159 at 10. Specifically, Eiland asserts that his counsel performed deficiently by failing to:

> (1) raise meritorious arguments challenging the sufficiency of the affidavits supporting the wiretap applications and extensions thereof under Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510, *et seq.* (*Id.* at 10-33);
>
> (2) move *in limine* to exclude or object to FBI Agent Bevington's irrelevant and vouching testimony concerning cooperating witnesses (*Id.* at 33-52);
>
> (3) present evidence that Eiland had a source of income from his auto-shop business that could have justified his personal spending and lifestyle (*Id.* at 52); and
>
> (4) object to FBI Agent Hall's lay opinion testimony interpreting wiretaps (*Id.* at 52-53).

## II. LEGAL STANDARD

### A. Section 2255 Motion

Pursuant to 28 U.S.C. § 2255, a prisoner may collaterally attack an otherwise final sentence if it was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

3

maximum authorized by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255(a). Under such a motion, a prisoner may ask a court to vacate, set aside, or correct the sentence. *Id.* If the sentence is found by the court to deny or infringe upon a prisoner's constitutional rights such that the judgment is "vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a court shall grant a hearing. *Id.*

Under § 2255, the petitioner bears the burden of proof, and must demonstrate by a preponderance of the evidence that he is entitled to relief. *United States v. Pollard*, 602 F. Supp. 2d 165, 168 (D.D.C. 2009). "Relief under § 2255 is an extraordinary remedy in light of society's legitimate interest in the finality of judgments." *United States v. Zakas*, 793 F. Supp. 2d 77, 80 (D.D.C. 2011). A petitioner asserting a § 2255 motion must therefore "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

### B. Ineffective Assistance of Counsel

Eiland claims ineffective assistance of counsel as to his trial counsel—a claim he did not raise on direct appeal. Ordinarily, claims not raised on direct appeal may not be raised as part of a collateral attack on the sentence unless the petitioner shows either: (1) cause for failing to raise the issue and prejudice as a result of the alleged constitutional violation, or (2) actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Ineffective assistance of counsel claims, however, are not subject to this procedural default, and petitioners asserting such claims need not show cause and prejudice for having failed to raise the issue on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

4

An ineffective assistance of counsel claim is comprised of two elements: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

Deficiency of performance is established by demonstrating "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* More specifically, the defendant must show that his counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. A court reviewing the actions of counsel at trial must "indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner "must show that counsel's actions were not supported by a reasonable strategy." *Massaro*, 538 U.S. at 505.

Prejudice is established by demonstrating that as a result of counsel's errors, the petitioner was deprived of a fair trial. *Strickland*, 466 U.S. at 687. This requires the defendant to show that "but for trial counsel's error[,] there is a reasonable probability that the defendant would not have been found guilty." *Id.* at 694.

## III. DISCUSSION

### A. The Wiretap Affidavits and Extensions Thereof

A large portion of Eiland's motion is devoted to discussing his trial counsel's deficient performance in failing to raise meritorious arguments challenging the affidavits submitted in support of wiretap applications and subsequent extensions thereof, with a particular emphasis on the February 13, 2004, affidavit submitted by Agent Sparks. ECF No. 1159 at 10-33. This same issue permeated the initial trial that occurred in this Court, as well as the appeal to the D.C. Circuit. *Eiland*, 738 F.3d at 346-51. Before trial, Eiland, Miller, and other defendants charged under the

indictment brought numerous motions to suppress the wiretap evidence. *Eiland*, 398 F. Supp. 2d at 162-63. They argued, *inter alia*, that: (1) the affidavits contained conclusory language that was insufficient to establish probable cause; (2) the defendants were entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), due to the falsehoods, reckless statements, and omitted information contained in or left out of the affidavits, and (3) that the affidavits were deficient for failing to demonstrate why less intrusive methods of investigation were not feasible. *Id*. This Court issued an opinion on October 21, 2005, denying all motions and holding that: (1) sufficient probable cause existed for the authorization of the wiretaps and subsequent extensions thereof; and (2) the issuing judges did not abuse their discretion in finding that the wiretap authorizations were necessary because alternative investigative techniques had either been exhausted or were impractical. *Id*. at 167-75.

Later, on appeal, while failing to challenge the denial of a *Franks* hearing, the defendants argued that the necessity requirement for authorizing the wiretap had not been met due to the Sparks 2/13/04 Affidavit's failure to identify why the use of pen registers, toll records, physical surveillance, and cooperating government informants was insufficient in this particular investigation. *Eiland*, 738 F.3d at 346-51. The D.C. Circuit affirmed this Court's findings that both probable cause and necessity were established by the wiretap applications. *Id*.

Eiland now asserts in the present Motion that his counsel performed deficiently by failing to raise meritorious arguments challenging the wiretaps. Specifically, he makes the following three major arguments:

> (1) Eiland's counsel failed to challenge the deliberate or reckless, material omissions of pen register and toll record analysis and the failure to use trap and trace techniques (ECF No. 1159 at 12);

(2) Eiland's counsel failed to challenge the deliberate or reckless omission of information regarding a key informant (cooperating witness 12, or "CW-12") from the initial affidavit supporting the Miller wiretap (*Id.* at 18); and

(3) Eiland's counsel failed to challenge the deliberate or recklessly misleading portions of the affidavits supporting the Miller and Eiland wiretaps mischaracterizing Cinquan Blakney as a leader of the criminal organization (*Id.* at 22).

Each of these arguments is meritless. Even assuming *arguendo* that Eiland's attorney performed deficiently by failing to raise these arguments regarding the wiretaps, Eiland is unable to show that he was thereby prejudiced. *See Strickland*, 466 U.S. at 700. Each argument will be addressed individually.

*i.* *The Omission of Pen Register and Toll Record Analysis*

Eiland first argues that Special Agent Sparks's omission of information about Miller's phone use in the affidavit supporting the initial application to tap Miller's phone rendered the affidavit inadequate under 18 U.S.C. § 2518(1)(c). A wiretap application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* at 12; 18 U.S.C. § 2518(1)(c). Eiland avers that his counsel performed deficiently by failing to challenge this deliberate or reckless omission and resulting misrepresentation, as the information was available to Sparks during the several months leading up to the submission of the wiretap application. ECF No. 1159 at 14.

Eiland claims the toll records and pen register data would have "provided a record of long distance numbers called and received by Miller's phone," as well as "the duration of calls." *Id.* at 15 n.5. Had this information been included in the application, Eiland argues, a reasonable judge might have found that normal investigative techniques were sufficient. *Id.* at 17. Eiland's theory is that the omission of this information renders the affidavit less than the "full and complete

7

statement" required under the statute to establish the necessity of the wiretap. His attorney's incompetence, he argues, stems from his failure to consider information available from "Miller and other sources" which would have shown that "Miller regularly made or received long distance calls to or from out of town drug sources on the target phone" during the three months leading up to the wiretap application. *Id.* at 15. With this information, Eiland contends that his counsel could have established the need for a *Franks* hearing that might have invalidated the warrant and the resulting evidence therefrom.

The crux of this argument rests on Eiland's assertion that the Miller wiretap was necessary, "*primarily,* to identify out of town drug sources, methods of transporting drugs from them into the District of Columbia and related information such as storage facilities." ECF No. 1159 at 14 (emphasis added). After representing this goal of identifying out-of-town contacts as the primary reason for the wiretap, Eiland asserts that the omission of information already used by the FBI to identify some of the defendants' out-of-town contacts constituted a material misrepresentation to the issuing judge regarding the necessity of the tap. *Id.* at 14-16.

In fact, there is nothing in the Sparks 2/13/04 Affidavit giving the indication that the identification of "out-of-town drug sources" was the *primary* justification for the wiretap. *See* A308-09; Sparks 2/13/04 Aff. 51-52. Instead, as the government observes in its Opposition Brief, the affidavit identifies a number of important details about the drug trafficking operation that had eluded authorities after months of conducting traditional investigative techniques. ECF No. 1169 at 22-23. These areas included: "(a) the means by which the drugs were obtained; (b) the manner and timetable of shipments; (c) the locations where drugs and illegally obtained assets were hidden; or (d) the manner in which the defendants concealed their activities." *Eiland*, 738 F.3d at 349 (paraphrasing the February 13, 2004, Sparks Affidavit). As the D.C. Circuit noted, while the

pen register data no doubt conveyed important information, it could not convey the substance of what was being discussed on the calls. *Id.* The affidavit also established that there were no cooperating sources able to fill in most of these gaps. *Id.*

Even if it is assumed that Eiland's counsel acted deficiently by failing to raise these specific objections to the wiretap evidence, Eiland cannot show that he was thereby prejudiced. Given the wide range of gaps in the investigation at the time the initial affidavit supporting the Miller wiretap was submitted, it is highly unlikely an issuing judge would have denied the wiretap application due to the availability of pen register and toll record data. As the D.C. Circuit has already held on direct appeal, "[t]he government was not obliged to include in the applications every detail known to it concerning the conspiracy." *Eiland*, 738 F.3d at 349. The affidavit "adequately demonstrated that traditional investigative techniques had been employed and holes remained in the evidence that could only reasonably be filled by wiretap." *Id.* Eiland has therefore failed to demonstrate that his counsel's failure to challenge the omission of pen register and toll record data prejudiced him by depriving him of a fair trial.

        *ii.*    *The Omission of Information Regarding a Key Informant*

Eiland's assertion that his counsel performed deficiently by failing to challenge the omission of information about CW-12 in the initial affidavit supporting the Miller wiretap merits little discussion. He argues that because this informant was "trusted enough by the main targets of the investigation," CW-12 could have been used by law enforcement to "advance the investigation by traditional methodology." ECF No. 1159 at 19. The omission of information about this informant and his potential investigative value in the initial Miller wiretap affidavit, Eiland argues, was a "deliberate or reckless attempt to mislead the issuing court on the necessity for electronic surveillance." *Id.* at 21.

9

As the Circuit observed on direct appeal, CW-12 "was in a halfway house from January 16, 2004 to March 5, 2004." *Eiland*, 738 F.3d at 351 n.4. CW-12 was therefore not mentioned in the Sparks affidavit "because he was not able to provide assistance to the investigation until he left the halfway house." *Id.* Information about CW-12 in the initial affidavit was therefore *completely irrelevant* to establishing the necessity of the Miller wiretap in February of 2004. Eiland's counsel did not perform deficiently by failing to assert a meritless argument, and this claim is consequently rejected.

    *iii.* *The Mischaracterization of Cinquan Blakney as a Leader of the Organization Under Investigation*

Eiland next argues that his counsel performed deficiently by failing to challenge the "deliberate or recklessly misleading portions of all affidavits supporting the Miller and Eiland taps mischaracterizing Cinquan Blakney as a leader of the organization under investigation." ECF No. 1159 at 22. This mischaracterization, he argues, came from the repeated references to Blakney in the wiretap application affidavits as a third leader of the criminal organization along with Miller and Eiland. *Id.* at 23-24. Eiland contends in his Motion that at the time the initial Miller wiretap application was submitted, no informants available to the government had been able to link Blakney to the conspiracy, and no controlled purchases listed in the affidavit connected Blakney to the Miller/Eiland organization. *Id.* at 26-30. Consequently, he argues, the difficulty of investigating Blakney by traditional methods was erroneously considered in conjunction with the investigation of Eiland and Miller, which he argues played a significant role in the determination that the wiretaps were necessary. *Id.* at 23. Moreover, Eiland asserts that the first affidavit for the Miller wiretap failed to state facts establishing probable cause that Blakney was a leader of the organization. *Id.* at 25.

Eiland concedes that the affidavits did provide pen register and toll record data showing that "50 calls to or from Miller's phone between November 6, 2003, and January 17, 2004 involved a phone subscribed to Cinquan Blakney's mother, assertedly used by Mr. Blakney." *Id.* at 30. Eiland also cites a statement by Agent Sparks in the affidavit supporting the Miller wiretap explaining that "one Jamilla Brown 'was . . . able to confirm that Cinquan Blakney and Frederick Miller have a long standing close relationship.'" *Id.* at 30 (quoting Sparks 2/13/04 Aff. 30, ¶47). These two allegations, Eiland avers, were too weak to establish probable cause that Blakney was a leader of the organization, given that "[t]here is no information on the content of the calls, whether Mr. Blakney was the caller or recipient, or even if such calls were completed." *Id.*

Eiland's own Motion acknowledges that the affidavits contained all of the above listed information concerning Miller's connections to Blakney, including a statement explaining that Blakney refused to sell heroin to one Eric Allison because "he did not want any problems with Eiland because he knew Allison sold Eiland's heroin." *Id.* at 27 (quoting Sparks 2/13/04 Aff. 21, ¶32). Furthermore, the excerpts listed in Eiland's Motion from the Sparks 2/13/04 Affidavit all refer to difficulties in investigating the "trio" (Miller, Blakney, and Eiland) by traditional methods. *See id.* at 23-24. Aside from asserting a more tenuous factual link between Miller and Blakney than existed between Miller and Eiland, the Motion fails to convincingly show that Agent Sparks's decision to list Blakney as a third potential leader of the criminal organization played a significant role in the issuing judges' decisions to allow the wiretaps. As already discussed above, the investigation was hindered by the inadequacy of traditional methods to identify a number of important details about the operation as a whole—not only, or even predominantly, the details of Blakney's involvement. Eiland ignores these significant investigative difficulties, instead generally asserting that "significant progress" had been made in the investigation against Miller

11

prior to the wiretap. *Id.* at 31. Such progress, he argues, was lacking in the investigation of Blakney. *Id.*

Because all of the above information was reflected in the affidavits, the issuing judges were in a position to evaluate the strength of the wiretap applications based on the relevant information available to the government at that time. Those issuing judges, this Court, and the D.C. Circuit have each individually verified that the wiretaps were justified by both probable cause and necessity. *See Eiland*, 398 F. Supp. 2d 163-172; *Eiland*, 738 F.3d at 346-351. Any additional objection by Eiland's attorney challenging the sufficiency of the affidavits on these specific grounds would have been highly unlikely to have changed those determinations. Eiland's assertion that a challenge by his attorney to these statements could have entitled him to a *Franks* hearing is thus nothing but weak speculation, falling well short of the strong initial showing required to clear the "significantly higher hurdle than would exist on direct appeal" as required by § 2255. *Frady*, 456 U.S. at 166.

Furthermore, Eiland has done nothing to demonstrate that the "misleading" statements in any of the Miller wiretap affidavits were made deliberately or with reckless disregard for the truth. "Under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to challenge the validity of a search warrant affidavit, 'the defendant must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Dorman*, 860 F.3d 675, 684 (D.C. Cir. 2017) (quoting *United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988)). Given the documented connections between Miller and Blakney, it is not at all clear that listing Blakney in the wiretap affidavits as a possible third leader of the organization was even reckless, let alone deliberately inserted to mislead the issuing judges.

The probability that a *Franks* hearing would have been ordered in the event of Eiland's proposed objection is thus incredibly low. Consequently, even if this Court indulges the generous assumption that Eiland's attorney acted deficiently by failing to raise these specific objections to the Miller wiretap affidavits, Eiland has failed to show that he was prejudiced by this failure. This argument is therefore rejected.

> B. **Counsel's Failure to Move *In Limine* to Exclude, Object to, or Strike Testimony of FBI Agent John Bevington**

Eiland next argues that his counsel performed deficiently by failing to challenge Agent Bevington's testimony during trial, which Eiland contends (1) vouched for the credibility of cooperating witnesses, and (2) suggested that the Court was monitoring the truthfulness of cooperating witnesses. ECF No. 1159 at 33-52. Agent Bevington testified as an expert on investigations of criminal conspiracies, specifically discussing the definition of a conspiracy, the methods used to investigate a conspiracy, the procedure of obtaining a search warrant and authorization for a wiretap, and how the FBI monitors a wiretap. *Eiland*, 738 F.3d at 351.

At trial, Bevington testified that information from informants was typically corroborated by the FBI through other investigative methods: "[E]ven if we don't know it at that particular time, we have the ability to investigate anything they tell us and determine whether or not they are being truthful accurate." Oct. 4, 2006 AM Trial Tr. At 34; *see also id.* at 37 ("Before the government will agree to the plea agreement . . . we're going to know the information they're providing is correct or we're going to go out and conduct further investigation to determine what they have been telling us is correct.").

The D.C. Circuit addressed this argument on Eiland's direct appeal, finding that while the testimony constituted plain error pursuant to the Circuit's holding in *United States v. Moore*, 651

13

F.3d 30, 59-61 (D.C. Cir. 2011), the error was harmless.[1] *Eiland*, 738 F.3d at 353. Agent Bevington's testimony was mitigated, it held, by: (1) the trial court's instruction that the jury was the sole judge of witness credibility and therefore not bound by expert testimony; (2) the trial court's instruction to the jury stating, in essence, that witnesses who have accepted plea agreements for lighter sentences may have motive to lie; (3) Bevington's statement that he had no knowledge of the particular cooperating witnesses at Eiland's trial; (4) Bevington's admission on cross examination that sometimes cooperating witnesses lie; and (5) the significant evidence of Eiland's guilt, including the information collected from the wiretaps. *Id.*

By claiming that his counsel acted deficiently by failing to object to Agent Bevington's testimony, Eiland fails to consider that *Moore* was decided several years after his trial. While the D.C. Circuit had confronted witness credibility vouching by prosecuting attorneys in previous cases, *see, e.g., U.S. v. Boyd*, 54 F.3d 868, 871-72 (D.C. Cir. 1995), it was not until *Moore* that the D.C. Circuit "joined the other courts of appeals 'that have addressed the issue in condemning' the government's use of overview witness testimony." *United States v. McGill*, 815 F.3d 846, 876 (D.C. Cir. 2016) (quoting *Moore*, 651 F.3d at 60). Eiland therefore cannot show that his counsel acted deficiently, as the law he argues should have been considered had yet to be adopted within the D.C. Circuit.

Even if Eiland's counsel did act deficiently by failing to object to the vouching testimony, Eiland was not sufficiently prejudiced by Agent Bevington's testimony to prevail on his § 2255 motion in light of the other mitigating factors listed by the D.C. Circuit. To show prejudice for the purposes of an ineffective assistance of counsel claim, Eiland must demonstrate "a reasonable

---

[1] Eiland's Motion states that because his trial counsel failed to object to Agent Bevington's improper vouching testimony, the D.C. Circuit could only review the point of error under the plain error standard, rather than the lower standard of *de novo*. ECF No. 1159 at 51-52. Despite this higher threshold, the Circuit still found the testimony to be plain error—though it determined this error was harmless. *Eiland*, 738 F.3d at 353.

14

probability that [he] would not have been found guilty" but for his trial counsel's errors. *Strickland*, 466 U.S. at 694. The admission of Bevington's vouching testimony was already held by the Circuit to be harmless error, with any potential prejudice mitigated by other factors—namely the "significant evidence of [Eiland's] guilt." *Eiland*, 738 F.3d at 353. He has thus failed to show that he was prejudiced by his attorney's failure to move *in limine* to object to Agent Bevington's testimony.

Eiland also identifies a portion of Agent Bevington's testimony that he claims implied that the Government and the Court were monitoring the truthfulness of the informants' testimony. Eiland's motion states, in relevant part, that:

> Bevington explained that if a cooperating witness ". . . provided substantial assistance to the government . . .' the prosecutor files a motion with the court which unties its' [sic] hands in sentencing. Bevington testified that neither law enforcement nor the prosecutor determines the ultimate sentence. "It's the judge they plead before."

ECF No. 1159 at 39. These statements, Eiland argues, suggest "that the government and the court were monitoring the truthfulness of [the witness's] testimony and that any untruthfulness would be punished." *Id.* at 41.

Eiland's argument that his attorney performed deficiently by failing to object to Agent Bevington's statement "suggesting that the court was monitoring the truthfulness of the witness testimony" is completely devoid of merit. ECF No. 1159 at 38-39. As the government observed in its Opposition, the D.C. Circuit determined this exact argument to be invalid on appeal, holding that "Agent Bevington merely stated that after a cooperating witness's compliance is complete, the government files a motion giving the court discretion to depart from a mandatory minimum in sentencing the witness." *Eiland*, 738 F.3d at 353 n.9. The Circuit specifically found that the testimony was not used to "'explicitly or implicitly indicate that [the government] can monitor and accurately verify the truthfulness of the witness' testimony.'" *Id.* (quoting *United States v. Brown*,

508 F.3d 1066, 1074 (D.C. Cir. 2007)). Eiland's attorney did not perform deficiently by failing to object to proper testimony, and this argument is therefore rejected.

### C. Counsel's Failure to Present Evidence that Eiland had a Source of Income from his Auto-Shop Business

Eiland contends that his counsel performed deficiently by failing to present evidence at trial of the income Eiland received from his auto shop business, which he argues would have "rebutted the Government's evidence that Eiland did not have a legitimate source of income to support the life style that he was living prior to his arrest in this case." ECF No. 1159 at 52. Eiland states that he was earning over $100,000 annually from this business, and his business partner, Melvin Furr, would have testified to this effect had he been called as a witness. *Id.*

Eiland has provided no affidavits by Furr to this effect. Nor has he even stated whether or not he informed his attorney of this business relationship, as noted by the Government in its Opposition. ECF No. 1169 at 37. Furthermore, in light of the "significant evidence of [Eiland's] guilt" already discussed above as sufficient to mitigate any prejudice resulting from Agent Bevington's improper vouching testimony, it is extremely unlikely that the revelation of this additional source of income would have had any effect on the trial verdict. *Eiland*, 738 F.3d at 353. Eiland has therefore failed to demonstrate prejudice as a result of any potentially deficient performance by his counsel for failing to raise this argument.

### D. Counsel's Failure to Object to FBI Agent Hall's Lay Opinion Testimony Interpreting Wiretaps

Finally, Eiland contends that his trial counsel performed deficiently by failing to object to FBI Agent Hall's opinion testimony interpreting the evidence gathered from the various wiretaps used in the investigation. ECF No. 1159 at 36. He cites *United States v. Hampton*, 718 F.3d 978, 981-83 (D.C. Cir. 2013), in which the Circuit held that "a lay witness may not give opinion

testimony interpreting cryptic evidence when the testimony violates Federal Rule of Evidence 701." *Eiland*, 738 F.3d at 354 (paraphrasing *Hampton*).

Again, Eiland cites authority that did not exist at the time of his trial. His attorney did not perform deficiently by failing to object to testimony that had yet to be deemed improper within the D.C. Circuit. Eiland therefore fails to demonstrate deficient performance by his trial counsel. Moreover, the Circuit, addressing this exact argument on appeal, determined that Eiland "failed to demonstrate any error [in allowing Agent Hall's testimony] was substantially prejudicial." *Id*. Eiland has therefore failed to demonstrate prejudice as well.

## IV. CONCLUSION

For the reasons stated above, Eiland has failed to show that the performance of his trial counsel was both deficient and prejudicial as required to establish ineffective assistance of counsel. *See Strickland*, 466 U.S. at 700. Consequently, the defendant's Motion Pursuant to 18 U.S.C. § 2255 [ECF No. 1159] will be **DENIED**.

A separate order will issue this date.

Date: July 23, 2018

　　　　　　　　　　　　　　　　　　　Royce C. Lamberth
　　　　　　　　　　　　　　　　　　　United States District Judge